```
USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: 9/30/22
```

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

NIVEDITA KULKARNI,

                Plaintiff,

-against-

ACTAVIS GENERICS, et al.,

                Defendants.

22-CV-5735 (PAE) (BCM)

---

NIVEDITA KULKARNI,

                Plaintiff,

-against-

HORIZON THERAPEUTICS PLC, et al.,

                Defendants.

22-CV-5740 (PAE) (BCM)

**ORDER**

---

BARBARA MOSES, United States Magistrate Judge:

      Plaintiff, who is proceeding *pro se*, paid the filing fees to commence both of these related actions against pharmaceutical manufacturers. Plaintiff alleges that she took a course of prednisone in 2019, after which she experienced episodes of shaking and muscle spasms that were ultimately diagnosed as a neurological disorder known as Functional Myoclonus, which still affects her, and which she believes was caused by the medication she took in 2019. In No. 22-CV-5735, plaintiff sues three generic pharmaceutical manufacturers on a failure-to-warn theory. In No. 22-CV-5740, she sues three different manufacturers on the same theory, stating in a letter that her second-filed suit is against "the brand name label." Pl. Ltr. dated Sept. 5, 2022 (Dkt. 8 in 22-CV-5735), at 2. Plaintiff explains that she took "the generic version" of the medication, manufactured by Actavis Generics (the first-named defendant in No. 22-CV-5735), but "given the complexity of the laws around bringing lawsuits against generic drugs vs. their brand name label, and given that I am a

pro se litigant – I do not currently understand if I should be suing the brand name drug, the generic drug, or both." *Id*.

Plaintiff now applies to proceed *in forma pauperis* (IFP) in both cases pursuant to 28 U.S.C. § 1915(a)(1). In her application (IFP App.) (Dkt. 11 in No. 22-CV-5735; Dkt. 10 in No. 22-CV-5740), plaintiff attests that she is employed, with earnings averaging $4523.33 per month (over $54,000 per year), and has no dependents, but is living "paycheck to paycheck." IFP App. at 1-2. She states that, in addition to her earnings, she received $7,472 in gifts from family members in the past year to help make ends meet; that her regular monthly expenses add up to approximately $2,900,[1] and that she still owes over $2,500 in outstanding medical bills. *Id*. at 2. As of the date of her IFP applications, she had $731.29 in her bank accounts. *Id*.

A grant of IFP status exempts a plaintiff from paying the initial filing fees, and entitles her to rely on the United States Marshals Service to serve the summons and complaint upon the defendants. 28 U.S.C § 1915(a)(1), (d). "It does not exempt litigants from the costs of copying and filing documents; service of documents other than the complaint; costs; expert witness fees; or sanctions." *Porter v. Dep't of Treasury*, 564 F.3d 176, 180 n.3 (3d Cir. 2009) (internal citations omitted); *see also Malik v. Lavalley*, 994 F.2d 90, 90 (2d Cir. 1993) ("federal courts are not authorized to waive or pay witness fees on behalf of an *in forma pauperis* litigant"); *Candelaria v. Coughlin*, 133 F.3d 906, at *4 (2d Cir. 1997) (citing *Malik* and holding that the district judge properly denied plaintiff's request to "provide an expert at government expense"); *Price v. Peress*, 2021 WL 3540319, at *1 (E.D.N.Y. July 27, 2021) ("[I]t is established law in the Second Circuit that federal courts are not authorized, for example, to waive or pay witness fees or other expenses

---

[1] This figure includes rent, utilities, internet, and certain other recurring monthly costs, but does not appear to include food, clothing, or transportation.

on behalf of an *in forma pauperis* litigant[.]") (collecting cases); *Harris v. Fischer*, 2012 WL 3964706, at *3 (S.D.N.Y. Sept. 10, 2012) ("[A]lthough the Court has granted Harris permission to proceed *in forma pauperis,* that status merely waives the payment of court fees and does not require the Court to pay for her discovery expenses or court transcripts."). In this case, since plaintiff has already paid the filing fees, it is only the fees for service of process that remain at stake.

The ability to proceed IFP is a "privilege provided for the benefit of indigent persons." *Cuoco v. U.S. Bureau of Prisons*, 328 F. Supp. 2d 463, 467 (S.D.N.Y. 2004) (quoting *Chung v. Dushane,* 2003 WL 22902561, at *2 (N.D. Ill. Dec. 9, 2003)). There is no pre-set income or asset level that qualifies a plaintiff for IFP status, and the plaintiff need not "demonstrate absolute destitution." *Potnick v. E. State Hosp.*, 701 F.2d 243, 244 (2d Cir. 1983). However, "he or she must demonstrate poverty to qualify." *Shabtai v. Levande,* 2013 WL 6116850, at *1 (E.D.N.Y. Nov. 20, 2013). District courts have broad discretion to determine whether a litigant has sufficiently demonstrated poverty. *Id.; see also Choi v. Chemical Bank,* 939 F. Supp. 304, 308-09 (S.D.N.Y. 1996). Here, the Court is not persuaded that plaintiff is financially unable to pay for service of process on defendants she has sued, all of which appear to be major pharmaceutical manufacturers (eliminating evasion of service as a risk). *See Richards v. Allied Universal Sec.*, 2019 WL 1748599, at *1 (E.D.N.Y. Apr. 18, 2019) (plaintiff with earnings of $2,200 per month, after taxes, and expenses of $2,042 per month was not indigent and did not qualify for IFP order).

For these reasons, plaintiff's IFP applications are DENIED.

Dated: September 30, 2022  **SO ORDERED**.
New York, NY

_____
**BARBARA MOSES**
**United States Magistrate Judge**

3